# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bky. Case No. 17-40075 |
| Midwest Asphalt Corporation | |
| Debtor. | Chapter 11 |
| Jointly Administered with: | |
|     MAR Farms, LLC | Bky. Case No. 17-41371 |
|     Delta Milling, LLC | Bky. Case No. 17-41372 |

| | |
|---|---|
| Mark Welty, | |
|     Plaintiff, | Adv. Case No. 18-04022 |
| vs. | |
| Callidus Capital Corporation, and Midwest Asphalt Services, LLC | |
|     Defendants, | |

## SECOND AMENDED COMPLAINT

For his Complaint against Defendants Callidus Capital Corporation and Midwest Asphalt Services, LLC, Plaintiff Mark Welty states and alleges as follows:

## INTRODUCTION

1. This is an action by Plaintiff against Defendants for (i) declaratory judgment, interpreting this Court's orders regarding the existence, extent, priority, and value of Plaintiff's post-petition liens and for (ii) equitable subordination due to the activities of Defendants, done for the purpose of deliberately prejudicing Plaintiff in an attempt to wrongfully reduce the value of Plaintiff's secured claims.

## PARTIES

2. Plaintiff Mark Welty is an individual residing in the State of Minnesota.

3. Defendant Callidus Capital Corporation is a publicly traded Canadian Corporation organized under the Ontario Business Corporations Act. Callidus's headquarters is located at 4620 - 181 Bay Street, P.O Box 792, Bay Wellington Tower, Brookfield Place, Toronto, Ontario M5J 2T3 Canada.

4. Defendant Midwest Asphalt Services, LLC is a Delaware Limited Liability Company with its principal place of business located at 6340 Industrial Drive, Suite 200, Eden Prairie, Minnesota 55346.

5. Midwest Asphalt Services is owned 100% by MWA Acquisition I Corp., a Canadian holding company with the same address as Callidus. MWA Acquisition I Corp. is owned 100% by Callidus.

# JURISDICTION

6. The petition commencing the underlying Chapter 11 case, *In re Midwest Asphalt Corporation*, No. 17-40075, was filed on July 12, 2016 (the "Filing Date").

7. The Chapter 11 case was converted to a Chapter 7 case on March 12, 2018.

8. The Chapter 7 case is currently pending before this Court.

9. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

10. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

11. This adversary proceeding arises under, inter alia, 11 U.S.C. § 105, 363, 364, 506, and 510(c)(1), and 28 U.S.C. § 2201, the Federal Declaratory Judgment Act, and qualifies as an adversary proceeding under Bankruptcy Rule 7001.

12. Pursuant to Bankruptcy Rule 7008, Plaintiff does consent to entry of final orders or judgment by the bankruptcy court.

# FACTUAL BACKGROUND

### I. This Court's cash-collateral orders limited Callidus's post-petition liens to the diminution in value of Callidus's cash collateral.

13. During the Chapter 11 case, Debtor filed multiple motions for the use of cash collateral, made up of cash, accounts receivable, and inventory.

14. Callidus objected to these motions, arguing that its cash collateral would not be adequately protected.

15. This Court granted Debtor's use of cash collateral, pursuant to 11 U.S.C. § 363, conditioned upon Debtor's grant of liens on assets not covered by Callidus's pre-petition liens, including certain titled vehicles, rolling stock, Chapter 5 actions, state-law causes of action, and the cash value of life insurance policies held by the Bury Family Trust and Blaine Johnson (the current and former owner of Debtor, respectively) (collectively the "Post-Petition Additional Collateral"). [*E.g.* Doc. 183.]

16. The liens given to Callidus were expressly limited to "the extent of diminution in value" of cash collateral as it existed on the filing date. [*Id.*]

## II. This Court granted priority post-petition liens and administrative claims to the Welty Loans.

17. This Court granted post-petition liens based on two loan motions, pursuant to 11 U.S.C. § 364:

   a. A $500,000 post-petition loan from MAC Investments (the "MAC Loan") and

   b. A loan of up to $2 million from Mr. Welty.

[Docs. 152, 184.]

18. This the MAC Loan was later assigned to Mr. Welty (the two loans collectively the "Welty Loans").

4.

19. This Court issued orders approving the Welty Loans, and granting post-petition liens on all assets of Debtor (including the Post-Petition Additional Collateral granted to Callidus), excepting only the Chapter 5 actions [*Id.*]

20. This Court's orders made the Welty Loan post-petition liens junior and subordinate only to valid liens of Callidus and pre-petition liens on certain equipment. [*Id.*]

21. This Court's orders also granted the Welty Loans super-priority administrative claims, junior and subordinate only to administrative claims of Callidus and certain equipment lien holders. [*Id.*]

22. There is currently due and owing, approximately $1,726,888 from the Welty Loans.

23. This Court explicitly "retain[ed] jurisdiction to hear and determine all matters arising from the implementation of [the Welty Loan orders]." [Docs. 152, ¶ 8, 184, ¶ 9.]

### III. This Court's sale order reserved the rights granted under the Welty Loans.

24. On December 18, 2017, this Court approved a sale of all, or substantially all, of the assets of Debtor to Callidus for a credit bid in the amount of $13,500,000, pursuant to 11 U.S.C. § 363 (the "Sale Order"). [Doc. 344.]

25. The Sale Order explicitly reserved the rights of Mr. Welty, under the Welty Loans, by ordering that a stipulation reserving these rights "remains in force." [*Id.*, ¶ 2.]

26. This Court explicitly retained jurisdiction over all aspects of implementation and interpretation of the Sale Order and its effects:

> This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the final purchase agreement between Debtors and Callidus, all amendments thereto, any waivers and consents thereunder, and of any agreements executed in connection therewith in all respects.

[Doc. 344, ¶ 14.]

27. The sale was completed and closed on January 19, 2018.

### IV. There is a judiciable controversy arising from this Court's orders.

28. Prior to and following the sale of Debtor assets, Plaintiff made demand on Callidus for the payment of his post-petition loans, or otherwise pay him the value of his collateral.

29. Based upon information given to Mr. Welty from Debtor, it was calculated that the value of Debtor's cash collateral had not diminished, and, in fact, had increased in value, based on the value of such collateral as it existed on the Filing Date.

30. Callidus denied that the value of cash collateral had increased, but, instead, alleged that it had, in fact, diminished in value since the Filing Date.

### V. Defendants committed inequitable conduct—deliberately harming Plaintiff.

31. Due in large part to the Welty Loans, Debtor was able to continue operations, which enabled its sale as a going concern—greatly increasing the value of Debtor's assets.

32. At all times relevant to this case, up to and including the closing of the sale of assets, Callidus maintained control and dominion over all of the assets of the Debtor, and directed the Debtor on the use of cash and cash collateral, and many other things.

33. The sale was scheduled for closing on January 15, 2018. All material preconditions for the closing were complete as of that date.

34. However, prior to closing, Callidus unilaterally refused to close, after it realized that the value of cash collateral was in excess of the value of that collateral as of the Filing Date.

35. The closing was extended, by Callidus, to January 19, 2018.

36. Callidus then directed Debtor to deplete its cash collateral by the payment of bills and loans benefiting Callidus in order to manipulate collateral value and with the intent of harming the Plaintiff.

### COUNT I DECLARATORY JUDGMENT
### 28 U.S.C. § 2201, BANKRUPTCY RULE 7001

37. Plaintiff restates and realleges the foregoing paragraphs of this complaint as if fully set forth herein.

38. A justiciable controversy exists between Plaintiff and Defendants as to the existence, priority, and value of Plaintiff's liens arising from this Court's orders and the Bankruptcy Code.

39. Plaintiff seeks a declaration of this Court, interpreting its orders and the Bankruptcy Code.

40. Plaintiff seeks a determination that Plaintiff holds a valid lien in the assets or proceeds of Debtor and that cash collateral and working capital assets increased in value in an amount to be proven at trial and that these rights survived the sale of Debtor's assets to Midwest Asphalt Services.

### COUNT II EQUITABLE SUBORDINATION
### 11 U.S.C. § 510(c)

41. Plaintiff restates and realleges the foregoing paragraphs of this complaint as if fully set forth herein.

42. The Welty Loans were necessary for Debtor to maintain operations and required by this Court for Debtor to use cash collateral for this purpose.

43. The Welty Loans enabled Debtor to continue business operations and Callidus and Midwest Asphalt Services to purchase the business as a going concern with significantly higher value than would have been realized absent the post-petition loans.

44. Callidus maintained control and dominion of the cash collateral assets and the operations of Debtor's business prior to the closing of the sale.

45. Callidus deliberately and significantly depleted Debtor's cash collateral during this period with the intent of harming Mr. Welty's interest and reducing the possibility that Callidus would have to repay Mr. Welty.

46. Based on the foregoing, pursuant to 11 U.S.C. § 510(c)(1) and principals of equitable subordination, Plaintiff is entitled to and seeks an order granting him priority over Callidus's claim to the extent of the outstanding debt on the post-petition loans, or in such other amount as this Court deems just and equitable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for relief as follows:

47. Declaratory judgment confirming the existence, priority, and value of Plaintiff's liens and that cash collateral and working capital assets increased in value in an amount to be proven at trial;

48. An order subordinating Defendants' claims to Plaintiff's claims;

49. For Plaintiff's costs and disbursements herein; and

50. For such other and further relief as the Court deems just and equitable.

Dated: June 11, 2018         /e/  Alexander J. Beeby
　　　　　　　　　　　　　　Alexander J. Beeby (398286)
　　　　　　　　　　　　　　Thomas J. Flynn (030570)
　　　　　　　　　　　　　　Larkin Hoffman Daly & Lindgren Ltd.
　　　　　　　　　　　　　　8300 Norman Center Drive
　　　　　　　　　　　　　　Suite 1000
　　　　　　　　　　　　　　Minneapolis, Minnesota  55437-1060
　　　　　　　　　　　　　　(952) 835-3800
　　　　　　　　　　　　　　abeeby@larkinhoffma.com
　　　　　　　　　　　　　　tflynn@larkinhoffman.com

　　　　　　　　　　　　　　*Attorneys for Plaintiff*

4825-5991-7671, v. 2

10.

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bky. Case No. 17-40075 |
| Midwest Asphalt Corporation | |
| Debtor. | Chapter 11 |
| Jointly Administered with: | |
|     MAR Farms, LLC | Bky. Case No. 17-41371 |
|     Delta Milling, LLC | Bky. Case No. 17-41372 |

Mark Welty,

        Plaintiff,        Adv. Case No. 18-04022

vs.

Callidus Capital Corporation, and
Midwest
Asphalt Services, LLC

        Defendants,

## CERTIFICATE OF SERVICE

    Under penalty of perjury, I, Alexander J. Beeby, declare that on June 11, 2018, the following documents were filed with the Court Via ECF:

1. Second Amended Complaint.
2. Certificate of Service.

Dated: June 11, 2018        */e/ Alexander J. Beeby*
                                                  Alexander J. Beeby